1    Kenneth M. Trujillo-Jamison (Bar No. 280212)
     ktrujillo-jamison@willenken.com
2    Eileen Ahern (Bar No. 216822)
     eahern@willenken.com
3    Kirby Hsu (Bar No. 312535)
     khsu@willenken.com
4    WILLENKEN LLP
5    707 Wilshire Blvd., Suite 4100
     Los Angeles, California 90017
6    Telephone:  (213) 955-9240
     Facsimile:   (213) 955-9250
7

8    Attorneys for Defendant X Corp.

9

10                    UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12

13   Jeremy Ryan, a California individual,      Case No.: 3:24-cv-03553-WHO

14                                              Hon. William H. Orrick
                    Plaintiff,
15                                              **DEFENDANT'S NOTICE OF MOTION
                                                AND MOTION TO DISMISS
16   v.                                         PLAINTIFF'S SECOND AMENDED
                                                COMPLAINT; MEMORANDUM OF
17   X Corp., a Nevada corporation,             POINTS & AUTHORITIES**

18                                              Date:      March 19, 2025
                    Defendant.                  Time:      2:00 p.m.
19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I. INTRODUCTION .............................................................................................................1
II. BACKGROUND ..............................................................................................................2
    A. The Court's Order Dismissing the Initial Complaint.............................................2
    B. The Court's Order Dismissing the FAC ...............................................................3
    C. Plaintiff's Allegations in the SAC .......................................................................3
    D. X Corp.'s Terms..................................................................................................4
III. LEGAL STANDARD .......................................................................................................6
IV. ARGUMENT ...................................................................................................................6
    A. X Corp.'s Terms Bar Plaintiff's Claims ..............................................................6
    B. Section 230 Immunizes X Corp. From Plaintiff's Claims ......................................9
    C. The First Amendment Bars Plaintiff's Claims.....................................................13
    D. Plaintiff Fails to State Any Plausible Claim .......................................................14
        1. Plaintiff Fails to State a Plausible Claim for Promissory Estoppel ..........14
        2. Plaintiff Fails to State a Plausible Claim for Unjust Enrichment .............16
        3. Plaintiff Fails to State a Plausible Claim for Promissory Fraud ...............18
        4. Plaintiff Fails to State a Plausible UCL Claim .........................................22
    E. Leave to Amend Should Be Denied....................................................................24
V. CONCLUSION................................................................................................................25

1

## <u>TABLE OF AUTHORITIES</u>

2

Page(s)

3

**Cases**

4

*Anderson v. PHH Mortg.*,
  2012 WL 4496341 (C.D. Cal. Sept. 28, 2012) ........................................................................ 16

5

*Ashcroft v. Iqbal*,
  556 U.S. 678 (2009) .......................................................................................................... 6, 15

6

*Austin v. Tesla, Inc.*,
  2022 WL 2315210 (9th Cir. 2022) ....................................................................................... 24

7

8

*Avidity Partners, LLC v. State of Cal.*,
  221 Cal. App. 4th 1180 (2013) ............................................................................................. 14

9

*Barnes v. Yahoo!, Inc.*,
  570 F.3d 1096 (9th Cir. 2009) ................................................................................... 3, 11, 12

10

11

*Brittain v. Twitter, Inc.*,
  2019 WL 2423375 (N.D. Cal. June 10, 2019) ....................................................................... 11

12

*Calise v. Meta Platforms, Inc.*,
  103 F.4th 732 (9th Cir. 2024) .............................................................................................. 16

13

14

*Caraccioli v. Facebook, Inc.*,
  167 F. Supp. 3d 1056 (N.D. Cal. 2016) ................................................................................ 12

15

16

*Cervantes v. Countrywide Home Loans, Inc.*,
  656 F.3d 1034 (9th Cir. 2011) .............................................................................................. 24

17

*Chuang v. Dr. Pepper Snapple Grp., Inc.*,
  2017 WL 4286577 (C.D. Cal. Sept. 20, 2017) ...................................................................... 18

18

19

*Coronavirus Rep. v. Apple, Inc.*,
  85 F.4th 948 (9th Cir. 2023) ............................................................................................... 19

20

*Cullen v. Netflix, Inc.*,
  2013 WL 140103 (N.D. Cal. Jan. 10, 2013) ......................................................................... 20

21

22

*Dang v. Samsung Elecs. Co.*,
  2018 WL 6308738 (N.D. Cal. Dec. 3, 2018) ......................................................................... 18

23

*Darnaa, LLC v. Google Inc.*,
  236 F. Supp. 3d 1116 (N.D. Cal. 2017) .................................................................................. 8

24

*Darnaa, LLC v. Google LLC*,
  756 F. App'x 674 (9th Cir. 2018) ........................................................................................... 8

25

26

*Davis v. HSBC Bank Nev., N.A.*,
  691 F.3d 1152 (9th Cir. 2012) ......................................................................................... 23, 24

27

*Derakhshan v. Mortg. Elec. Registration Sys., Inc.*,
  2009 WL 10673155 (C.D. Cal. June 29, 2009) ..................................................................... 20

28

*Ebeid v. Facebook, Inc.*,
  2019 WL 2059662 (N.D. Cal. May 9, 2019) ................................................................. 10

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
  521 F.3d 1157 (9th Cir. 2008) ................................................................. 3, 9, 12, 13

*Fed. Agency of News LLC v. Facebook, Inc.*,
  432 F. Supp. 3d 1107 (N.D. Cal. 2020) ................................................................. 11

*Flowers v. Wells Fargo Bank, N.A.*,
  2011 WL 2748650 (N.D. Cal. July 13, 2011) ................................................................. 19

*Garcia v. Sony Comput. Ent. Am., LLC*,
  859 F. Supp. 2d 1056 (N.D. Cal. 2012) ................................................................. 24

*Hirsch v. Bank of Am.*,
  107 Cal. App. 4th 708 (2003) ................................................................. 16

*Hodsdon v. Mars, Inc.*,
  891 F.3d 857 (9th Cir. 2018) ................................................................. 23

*Jenkins v. Commonwealth Land Title Ins. Co.*,
  95 F.3d 791 (9th Cir. 1996) ................................................................. 20

*JMP Sec. LLP v. Altair Nanotechnologies Inc.*,
  880 F. Supp. 2d 1029 (N.D. Cal. 2012) ................................................................. 21

*Johnson v. Mitsubishi Digital Elecs. Am., Inc.*,
  365 F. App'x 830 (9th Cir. 2010) ................................................................. 23

*Justo v. Indymac Bancorp*,
  2010 WL 623715 (C.D. Cal. Feb. 19, 2010) ................................................................. 20

*Kaur v. Comptroller of Currency, U.S. Dep't of the Treasury*,
  696 F. App'x 236 (9th Cir. 2017) ................................................................. 25

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ................................................................. 24

*King v. Facebook, Inc.*,
  2019 WL 4221768 (N.D. Cal. Sept. 5, 2019) ................................................................. 10, 12

*King v. Facebook, Inc.*,
  845 F. App'x 691 (9th Cir. 2021) ................................................................. 9

*KST Data, Inc. v. DXC Tech.*,
  2018 WL 5733515 (C.D. Cal. Apr. 30, 2018) ................................................................. 7

*Kwikset Corp. v. Superior Ct.*,
  51 Cal. 4th 310 (2011) ................................................................. 22

*Lewis v. YouTube, LLC*,
  244 Cal. App. 4th 118 (2015) ................................................................. 7

*Mac Isaac v. Twitter, Inc.*,
  557 F. Supp. 3d 1251 (S.D. Fla. 2021) ................................................................. 14

iii

*Magpali v. Farmers Grp., Inc.*,
  48 Cal. App. 4th 471 (1996) ............................................................................................ 20

*Marina Tenants Ass'n v. Deauville Marina Dev. Co.*,
  181 Cal. App. 3d 122 (1986) ........................................................................................... 17

*Markborough Cal. Inc. v. Superior Ct.*,
  227 Cal. App. 3d 705 (1991) ............................................................................................. 8

*McAfee v. PHH Mortg. Corp.*,
  2019 WL 13203931 (N.D. Cal. Oct. 8, 2019) ................................................................. 19

*Mend Health, Inc. v. Carbon Health Techs., Inc.*,
  588 F. Supp. 3d 1049 (C.D. Cal. 2022) .......................................................................... 15

*Minor v. Laggner*,
  2018 WL 10498450 (C.D. Cal. Dec. 10, 2018) ............................................................... 21

*Mishiyev v. Alphabet, Inc.*,
  444 F. Supp. 3d 1154 (N.D. Cal. 2020) ............................................................................ 6

*Moody v. NetChoice, LLC*,
  603 U.S. 707 (2024) ................................................................................................. 13, 14

*Morton v. Twitter, Inc.*,
  2021 WL 1181753 (C.D. Cal. Feb. 19, 2021) .................................................................. 10

*Murphy v. Twitter, Inc.*,
  60 Cal. App. 5th 12 (2021) .......................................................................... 7, 8, 10, 14, 15

*O'Handley v. Padilla*,
  579 F. Supp. 3d 1163 (N.D. Cal. 2022) ........................................................................... 13

*O'Handley v. Weber*,
  62 F.4th 1145 (9th Cir. 2023) .......................................................................................... 13

*Oracle USA, Inc. v. XL Glob. Servs., Inc.*,
  2009 WL 2084154 (N.D. Cal. July 13, 2009) ................................................................. 22

*Patriot Sci. Corp. v. Korodi*,
  504 F. Supp. 2d 952 (S.D. Cal. 2007) ............................................................................. 16

*Peterson v. Cellco P'ship*,
  164 Cal. App. 4th 1583 (2008) ................................................................................... 16, 18

*Rangel v. Dorsey*,
  2022 WL 2820107 (N.D. Cal. July 19, 2022) ............................................................ 10, 12

*Rattagan v. Uber Techs., Inc.*,
  19 F.4th 1188 (9th Cir. 2021) .......................................................................................... 21

*Riggs v. MySpace, Inc.*,
  444 F. App'x 986 (9th Cir. 2011) ..................................................................................... 18

*Robinson Helicopter Co. v. Dana Corp.*,
  34 Cal. 4th 979 (2004) ..................................................................................................... 21

MOTION TO DISMISS

*Rogozinski v. Reddit, Inc.*,
  2023 WL 4475581 (N.D. Cal. July 11, 2023) ........................................................ 22

*S. Cal. Gas Leak Cases*,
  7 Cal. 5th 391 (2019) .............................................................................................. 21

*Sepanossian v. Nat'l Ready Mix Co., Inc.*,
  97 Cal. App. 5th 192 (2023) .................................................................................... 16

*Sheen v. Wells Fargo Bank, N.A.*,
  12 Cal. 5th 905 (2022) ............................................................................................. 21

*Snyder v. Allison*,
  857 F. App'x 329 (9th Cir. 2021) ............................................................................ 24

*Tatum v. X Corp.*,
  733 F. Supp. 3d 453 (E.D.N.C. May 13, 2024) ........................................................ 9

*Total Coverage, Inc. v. Cendant Settlement Servs. Grp., Inc.*,
  252 F. App'x 123 (9th Cir. 2007) ............................................................................ 14

*UMG Recs., Inc. v. Glob. Eagle Ent., Inc.*,
  117 F. Supp. 3d 1092 (C.D. Cal. 2015) ................................................................... 19

*Warner v. Tinder Inc.*,
  105 F. Supp. 3d 1083 (C.D. Cal. 2015) ................................................................... 23

*Watkinson v. MortgageIT, Inc.*,
  2010 WL 2196083 (S.D. Cal. June 1, 2010) ........................................................... 17

*Whitaker v. Tesla Motors, Inc.*,
  985 F.3d 1173 (9th Cir. 2021) ................................................................................. 17

*Young v. Facebook, Inc.*,
  2010 WL 4269304 (N.D. Cal. Oct. 25, 2010) ........................................................... 9

*Yuksel v. Twitter, Inc.*,
  2022 WL 16748612 (N.D. Cal. Nov. 7, 2022) ...................................................... 7, 11

*Zepeda v. PayPal, Inc.*,
  777 F. Supp. 2d 1215 (N.D. Cal. 2011) ................................................................... 17

*Zhang v. Twitter Inc.*,
  2023 WL 5493823 (N.D. Cal. Aug. 23, 2023) ................................................... 10, 11

*Zimmerman v. Facebook, Inc.*,
  2020 WL 5877863 (N.D. Cal. Oct. 2, 2020) ........................................................... 10

**Statutes**

47 U.S.C. § 230……………………………………………………………….…1, 3, 9, 11

47 U.S.C. § 230(c)(1)………………………………………………………….....9, 10, 11

47 U.S.C. § 230(c)(3)……………………………………………………………………..9

47 U.S.C. § 230(e)(3)……………………………………………………………...9

47 U.S.C. § 230(f)(2)……………………………………………………………10

Cal. Bus. & Profs. Code § 17200……………………………………………...23

**Rules**

Federal Rule of Civil Procedure 9(b)………………………………………...24, 25

Federal Rule of Civil Procedure 12(b)(6)……………………………………… 1, 6

Federal Rule of Civil Procedure 15(a)(2)……………………………………… 24

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2      PLEASE TAKE NOTICE that, on March 19, 2025, at 2:00 p.m., or as soon thereafter as

3  the matter may be heard, this Motion to Dismiss Plaintiff's Second Amended Complaint

4  ("Motion"), brought by Defendant X Corp., will be heard. This Motion is based on this Notice of

5  Motion and the Memorandum of Points and Authorities provided below, as well as Defendant's

6  Request for Judicial Notice ("RJN") and the Declaration of Kenneth M. Trujillo-Jamison, filed

7  concurrently.

8

## STATEMENT OF REQUESTED RELIEF

9      X Corp. requests that the Court dismiss Plaintiff's Second Amended Complaint ("SAC")

10  (Dkt. 47) without leave to amend.

11

## MEMORANDUM OF POINTS AND AUTHORITIES

12  **I.    INTRODUCTION**

13      As it did for Plaintiff's two already-dismissed complaints, Federal Rule of Civil

14  Procedure 12(b)(6) requires dismissal of the SAC. Plaintiff rehashes the same allegations this

15  Court already deemed insufficient to state a claim—*i.e.*, that X Corp. wrongfully suspended his

16  accounts on X, the social media platform operated by X Corp., and that X Corp. denied him an

17  opportunity to appeal the account suspensions. Plaintiff's lone new allegation is that Plaintiff

18  paid for a "premium" subscription for one of his multiple X accounts. That allegation does not

19  allow him to state any claim, however, because his claims based on that allegation still contend

20  that X Corp. wrongfully suspended that account from X.

21      In short, Plaintiff fails to state any claim upon which relief may be granted, for at least

22  four reasons.

23      *First*, Plaintiff's claims fail because X Corp.'s Terms of Service ("Terms"), to which

24  Plaintiff agreed and which he acknowledges govern the parties' relationship, disclaim any

25  liability on X Corp.'s part for the removal of his content and his inability to access or use X, and

26  provide X Corp. the contractual right to suspend Plaintiff's accounts without liability to him.

27      *Second*, section 230 of the Communications Decency Act of 1996 ("Section 230"), 47

28  U.S.C. § 230, immunizes X Corp. from Plaintiff's claims. The SAC confirms those claims, at

their core, seek to impose liability against X Corp. for its protected publishing decisions.

*Third*, the First Amendment bars Plaintiff's claims, because it protects X Corp.'s editorial decisions about what content it allows to be disseminated on its private social media platform.

*Fourth*, Plaintiff fails to state any plausible claim against X Corp.

The Court has already given Plaintiff "one last opportunity" to try to state a claim. Dkt. 41 at 1. He should not be granted another opportunity—*i.e.*, a *fourth* chance—to try to plead his inherently flawed claims. This Court should dismiss the SAC without leave to amend and put an end to this meritless lawsuit.

## II.   BACKGROUND

### A.   The Court's Order Dismissing the Initial Complaint

This Court previously granted X Corp.'s motion to dismiss Plaintiff's initial Complaint. Dkt. 29 ("First Dismissal Order"). There, the Court dismissed without leave to amend Plaintiff's claims for (1) breach of contract, (2) intentional interference with Plaintiff's contractual relationships with third parties, (3) intentional interference with prospective economic advantage, and (4) conversion, as well as his claim for (5) violation of the California Unfair Competition Law ("UCL") to the extent it is predicated on X's suspension of his accounts. Dkt 29 at 4–15. The Court held those claims were barred by Section 230 because they "arise from X's decision to suspend his seven accounts and suspension is a traditional publishing function according to the Ninth Circuit." *Id.* at 5. The Court dismissed with leave to amend Plaintiff's claims for (1) unjust enrichment, (2) promissory estoppel, (3) promissory fraud, and (4) violation of the UCL based on a "second theory of liability." *Id.* at 15–21. Regarding Plaintiff's promissory estoppel and promissory fraud claims, the Court held that Plaintiff's allegations of purportedly "unambiguous personal promises and assurances" to Plaintiff—purportedly contained in X Corp.'s Terms, on certain of X's "Help Center" webpage, and in certain communications X Corp. allegedly sent to him when his accounts were suspended—did not contain "anything that [the Court] can reasonably interpret as a 'promise' by X to not suspend his account in the manner that it did," rendering his claims "implausible." *Id.* at 17–19.

**B.     The Court's Order Dismissing the FAC**

On September 24, 2024, Plaintiff filed his FAC, where he reasserted the four claims the Court granted him leave to amend: (1) unjust enrichment, (2) promissory estoppel, (3) promissory fraud, and (4) violation of the UCL. Dkt. 30.

In the Court's order granting X Corp.'s motion to dismiss the FAC ("Second Dismissal Order"), the Court held that X Corp.'s Terms barred all of Plaintiff's claims. Dkt. 41 at 3–8. In its analysis, the Court rejected Plaintiff's contention that his promissory fraud claim was not barred by the Terms under Cal. Civil Code § 1668, because it found that Plaintiff did not plausibly allege any "promise" by X Corp. and that his allegations "do not come close to meeting the Rule 9(b) particularity standard." Dkt. 41 at 7–8.

In addition, the Court found that Section 230 independently barred Plaintiff's unjust enrichment claim:

> [Plaintiff's] unjust enrichment claim fundamentally challenges X's decision to suspend his accounts, which is a publishing activity, and its continued collection of ad revenue associated with those accounts. The Ninth Circuit has held that any activity that "can be boiled down to deciding whether to exclude material that third parties seek to post online," i.e. publishing conduct, "is perforce immune under section 230." *Roommates.Com*, 521 F.3d at 1162-63, 1170-71; *see also Barnes*, at 1107 (quoting *Roommates.Com*). . . .

> [Plaintiff's unjust enrichment claim] alleges that X's decision to continue publishing ads connected to his accounts was wrongful, and its retention of associated revenue is unjust. This claim challenges X's publishing activity. It is barred by section 230.

*Id.* at 12.

The Court granted Plaintiff "one last opportunity" to amend his complaint. *Id.* at 1; *see also id.* at 13 ("I expect that I will not agree to further amendment thereafter.").

**C.     Plaintiff's Allegations in the SAC**

Plaintiff timely filed his SAC on January 22, 2025, where he reasserts the same four claims the Court dismissed in its Second Dismissal Order. *See generally* SAC.

In the SAC, Plaintiff rehashes the same allegations from his prior pleadings. For his promissory estoppel and promissory fraud claims, Plaintiff continues to allege that X Corp. broke the same purportedly "unambiguous personal promises and assurances" to Plaintiff—*i.e.*,

1  the very allegations that the Court considered and determined were insufficient to state a claim.

2  *Id.* ¶ 53.a-h; Dkt. 30 ("FAC") ¶ 85.a-h; Dkt. 1 ("Compl.") ¶ 64.a-h. And Plaintiff's promissory

3  estoppel and promissory fraud claims remain premised on the theory that the purported

4  "promises" constituted representations Plaintiff would be "given an opportunity to appeal his

5  suspension" (SAC ¶¶ 56, 77), even though the Court already considered and determined those

6  purported "promises" were insufficient to state a claim. *See* Dkt. 41 at 4, 7–8 (Plaintiff failed to

7  plausibly allege promissory fraud claim based on "X's misrepresentations about its appeals

8  process").

9       For his unjust enrichment claim, Plaintiff again alleges that X Corp. "unilaterally

10  terminated Plaintiff's accounts" but "continues to receive advertising revenue" from "Plaintiff's

11  content." SAC ¶¶ 68–71. This is based on his allegations that (1) the Terms "do[] not state that if

12  the user's account, or contract, is terminated, then [X Corp.'s] license [to use the user's content]

13  shall be terminated as well" (*id.* ¶ 44), and (2) an X Help Center webpage states that a post from

14  a suspended account is "hidden behind a notice that the post is from a suspended account" (*id.*

15  ¶ 40). But Plaintiff does not identify any alleged "hidden" post that is visible to other X users, or

16  any alleged advertising X Corp. placed on such posts, much less any alleged advertising revenue

17  X Corp. generated from such posts. Plaintiff also alleges that he "paid for a premium

18  subscription of at least one" of his "multiple" user accounts and that X Corp. "received the

19  benefit" of this payment. *Id.* ¶¶ 19, 22, 67. But Plaintiff does not allege that X Corp. failed to

20  provide him any services associated with the "premium subscription" he purportedly paid for.

21       Plaintiff's UCL claim is derivative of his other claims. That is, the UCL claim is

22  premised on X Corp.'s alleged "promise . . . that he would have the opportunity to appeal" and

23  on X Corp.'s alleged retention of "a license" to Plaintiff's content after suspending his account.

24  *Id.* ¶¶ 89-90.

25       Finally, Plaintiff continues to allege his "suspension from the X platform . . . damaged his

26  cryptocurrency and NFT business"—the sole basis of the damages he seeks. *Id.* ¶¶ 50–51.

27       **D.    X Corp.'s Terms**

28       Plaintiff's claims are based, at least in part, on X Corp.'s "Terms" as of "September 29,

1   2023."[1] *Id*. ¶ 53.a. That version of the Terms states the "Terms of Service . . . are part of the User

2   Agreement—a legally binding contract governing your use of X." RJN, Ex. A at 1. Plaintiff

3   acknowledges the Terms are a binding "contract" between the parties. *See, e.g.*, SAC ¶¶ 10, 56,

4   68, 89.

5           Regarding X Corp.'s use of Plaintiff's content posted on X, the Terms state, in relevant

6   part:

7           By submitting, posting or displaying Content on or through the Services, you grant

8           us a worldwide, non-exclusive royalty-free license (with the right to sublicense) to
            use, copy, reproduce, process, adapt, modify, publish, transmit, display and

9           distribute such Content. . . . Such additional uses by us . . . is made with *no
            compensation paid to you* with respect to the Content.

10

11  RJN Ex. A at 3 (emphasis added).

12          As for Plaintiff's access to and use of the X platform, the Terms state:

13          [T]he Services may change from time to time, at our discretion. We may stop

14          (permanently or temporarily) providing the Services or any features within the
            Services to you . . . . We may also remove or refuse to distribute any Content on

15          the Services . . . [and] suspend or terminate users . . . without liability to you.

16  *Id.*, Ex. A at 3. The Terms further state:

17          We may suspend or terminate your account or cease providing you with all or part

18          of the Services at any time if we reasonably believe: (i) you have violated these
            Terms or our Rules and Policies . . . . [W]e may also terminate your account . . . for

19          any other reason or no reason at our convenience.

20  *Id.*, Ex. A at 4.

21          The Terms also include a disclaimer provision that provides, in relevant part:

22          Your access to and use of the Services . . . is at your own risk. You understand and

23          agree that the Services are provided to you on an "AS IS" and "AS AVAILABLE"
            basis. . . . [X Corp.] disclaim[s] all responsibility and liability for: (i) the . . .

24          availability. . . of the Services or any Content . . . (iii) the deletion of, or the failure
            to store or to transmit, any Content and other communications maintained by the

25          Services . . . and (iv) whether the Services will meet your requirements or be
            available on an uninterrupted, secure, or error-free basis.

26

27

28  [1] On November 15, 2024, after the alleged events giving rise to this action occurred, X Corp.
    updated its Terms of Service (version 20).

1    *Id.*, Ex. A at 4; *accord* SAC ¶ 30.

2        And the Terms include a limitation of liability provision that provides, in relevant part:

3    TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, [X
     CORP.] SHALL NOT BE LIABLE FOR ANY INDIRECT, INCIDENTAL,
4    SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES, OR ANY LOSS OF
     PROFITS OR REVENUES, WHETHER INCURRED DIRECTLY OR
5    INDIRECTLY, OR ANY . . . OTHER INTANGIBLE LOSSES, RESULTING
     FROM  (i) YOUR ACCESS TO OR USE OF OR INABILITY TO ACCESS OR
6    USE THE SERVICES . . . . THE LIMITATIONS OF THIS SUBSECTION
     SHALL APPLY TO ANY THEORY OF LIABILITY, WHETHER BASED ON
7    WARRANTY, CONTRACT, STATUTE, TORT (INCLUDING NEGLIGENCE)
     OR OTHERWISE . . . .
8

9    RJN, Ex. A at 5.

10   **III.    LEGAL STANDARD**

11       "To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient

12   factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Mishiyev*

13   *v. Alphabet, Inc.*, 444 F. Supp. 3d 1154, 1159 (N.D. Cal. 2020) (quoting *Ashcroft v. Iqbal*, 556

14   U.S. 678, 678 (2009)). "[P]lausibility" requires the plaintiff to plead "factual content that allows

15   the court to draw the reasonable inference that the defendant is liable." *Iqbal*, 556 U.S. at 678.

16   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

17   statements, do not suffice." *Id.*

18   **IV.    ARGUMENT**

19       **A.    X Corp.'s Terms Bar Plaintiff's Claims**

20       In dismissing the FAC, this Court correctly held that "[a]ll of [Plaintiff's] claims are

21   barred by the Terms." Dkt. 41 at 3. The SAC should be dismissed for the same reason. Plaintiff

22   continues to admit that the Terms constitute a binding "contract" between the parties (*e.g.*, SAC

23   ¶¶ 10, 56, 68, 89). Plaintiff's only new allegation in the SAC is that Plaintiff paid for a premium

24   subscription for one of his "multiple" X accounts. *Id.* ¶¶ 19–22. But that allegation does not

25   address any of the deficiencies in Plaintiffs' claims that this Court has identified. *See* Dkt. 41 at

26   3–8. At bottom, Plaintiff's claims still seek to hold X Corp. liable for the act of suspending his

27   accounts, and therefore the Terms bar those claims.

28       The Terms provide that X Corp. "may stop (permanently or temporarily) providing the

1    Services or any features within the Services to" Plaintiff, and may "remove or refuse to distribute

2    any Content on the Services," and may "suspend or terminate users." RJN, Ex. A at 3–4. In other

3    words, this acknowledged "contract" (SAC ¶ 56) permits X Corp. to "stop providing its services

4    to users for any or no reason." Dkt. 41 at 3. Plaintiff's claims should be dismissed for this reason

5    alone. *See Yuksel v. Twitter, Inc.*, 2022 WL 16748612, at *5 (N.D. Cal. Nov. 7, 2022) ("Twitter

6    had the contractual right under the Terms to suspend [plaintiff's] account, and his breach of

7    contract claim therefore fails."); *Murphy*, 60 Cal. App. 5th at 35 ("[plaintiff's] claim necessarily

8    fails . . . because Twitter's terms of service expressly state that they reserve the right to 'suspend

9    or terminate [users'] accounts . . . for any or no reason' without liability").

10        Plaintiff's claims are also barred by the Terms' valid disclaimer and limitation of liability

11    clause. *See* Dkt. 41 at 8 ("The Terms anticipate and release X [Corp.] from liability for claims

12    like Ryan's," *i.e.*, Plaintiff's). The Terms provide that Plaintiff uses X "at [his] own risk," and

13    that X Corp. "disclaim[s] . . . all responsibility and liability for" the "availability . . . of the

14    Services or any Content," for "the deletion of . . . any Content and other communications

15    maintained by the Services," and "whether the Services will meet your requirements or be

16    available on an uninterrupted . . . basis." RJN, Ex. A at 4. The Terms also provide that X Corp.

17    "SHALL NOT BE LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL,

18    CONSEQUENTIAL OR PUNITIVE DAMAGES, OR ANY LOSS OF PROFITS OR

19    REVENUES . . . RESULTING FROM" Plaintiff's "INABILITY TO ACCESS OR USE THE

20    SERVICES." *Id.*, Ex. A at 5. This limitation on liability applies to "ANY THEORY OF

21    LIABILITY, WHETHER BASED ON . . . CONTRACT, STATUTE, TORT . . . OR

22    OTHERWISE." *Id.*

23        "Limitation of liability clauses 'have long been recognized as valid in California' and

24    may be used at a dismissal stage to reject a party's claims." *KST Data, Inc. v. DXC Tech.*, 2018

25    WL 5733515, at *3 (C.D. Cal. Apr. 30, 2018) (quoting *Lewis v. YouTube, LLC*, 244 Cal. App.

26    4th 118, 125 (2015)) (dismissing claim based on limitation of liability clause). "Such provisions

27    'are particularly important where,' as here," a platform offers its service "without seeking

28

1   compensation from the people entering the terms of service agreement."[2] *Darnaa, LLC v.*

2   *Google Inc.*, 236 F. Supp. 3d 1116, 1123 & n.3 (N.D. Cal. 2017) (quoting *Markborough Cal.*

3   *Inc. v. Superior Ct.*, 227 Cal. App. 3d 705, 714 (1991)), *aff'd sub nom. Darnaa, LLC v. Google*

4   *LLC*, 756 F. App'x 674 (9th Cir. 2018) (affirming dismissal because "the limitation of liability

5   provision bars [Plaintiff's] claim"); *see also Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 35

6   (2021) (enforcing limitation of liability clause and explaining that Twitter, like other "service

7   providers that offer free services to Internet users may have a legitimate commercial need to

8   limit their liability").

9        As before, the relief Plaintiff seeks are "INDIRECT, INCIDENTAL, SPECIAL,

10  CONSEQUENTIAL OR PUNITIVE DAMAGES, OR . . . LOSS OR PROFITS OR

11  REVENUES [allegedly] RESULTING FROM" Plaintiff's "INABILITY TO ACCESS OR USE

12  THE SERVICES" through X Corp.'s alleged suspensions of his accounts and failure to allow

13  him to appeal, for which X Corp. "SHALL NOT BE LIABLE." RJN, Ex. A at 5; *see, e.g.*, SAC

14  ¶¶ 53, 55 (for promissory estoppel claim, seeking damages based on X Corp.'s purported breach

15  of "promises and assurances" and "specific, personal promises" to Plaintiff by suspending his

16  account and "not giv[ing] Plaintiff an opportunity to appeal"); *id.* ¶¶ 70–72 (for unjust

17  enrichment claim, seeking recovery of X Corp.'s alleged "advertising revenue" and "profits"

18  purportedly obtained from its alleged use of Plaintiff's content after his account suspensions); *id.*

19  ¶¶ 77–79, 84, 86 (for promissory fraud claim, seeking damages, including "punitive damages,"

20  for X Corp.'s alleged misrepresentations about following its appeals policies); *id.* ¶¶ 92–93 (for

21  his UCL claim, seeking recovery for X Corp.'s retention of "a financial benefit from Plaintiff's

22  terminated livelihood" and for his purported loss "of the ability to continue promotions for

23  upcoming projects, develop existing ones, and build the waiting lists for the upcoming projects").

24  As this Court has held, Plaintiff's claims fall squarely within and are completely "barred by" the

25  Terms' disclaimer and limitation of liability clause. Dkt. 41 at 3–4; *see also Tatum v. X Corp.*,

26  733 F. Supp. 3d 453, 460–61 (E.D.N.C. May 13, 2024) (applying California law and holding

27

28  ───────────────
[2] Plaintiff alleges he paid for a premium subscription for one of his "multiple" X accounts. SAC
¶¶ 19, 22.

1   disclaimer and limitation of liability provision in X Corp.'s Terms barred statutory products

2   liability claim); *Young v. Facebook, Inc.*, 2010 WL 4269304, at *3–5 (N.D. Cal. Oct. 25, 2010)

3   (dismissing breach of contract and negligence claims because of limitation of liability clause).

4          In sum, as this Court has already found, Plaintiff's claims are barred in their entirety by

5   the Terms and should be dismissed. *See* Dkt. 41 at 3–8.

6          **B.      Section 230 Immunizes X Corp. From Plaintiff's Claims**

7          This Court has held that Section 230 immunizes X Corp. from Plaintiff's "claims that

8   treat [X Corp.] as [a] publisher[]." Dkt. 29 at 1. Plaintiff's claims in the SAC, at their core,

9   continue to seek to impose liability against X Corp. for his alleged "suspension from the X

10  platform." SAC ¶¶ 50–51. X Corp.'s alleged moderation of content on X through suspending

11  Plaintiff's X accounts is protected publishing activity under Section 230 for which X Corp. is

12  immune from liability. *See* 47 U.S.C. §§ 230(c)(1) & 230(c)(3); *Fair Hous. Council of San*

13  *Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1170–71 (9th Cir. 2008)

14  ("*Roommates*") ("[A]ny activity that can be boiled down to deciding whether to exclude material

15  that third parties seek to post online is perforce immune under section 230").

16         Section 230(c)(1) provides: "No provider or user of an interactive computer service shall

17  be treated as the publisher or speaker of any information provided by another information

18  content provider." 47 U.S.C. § 230(c)(1). Section 230(e)(3) provides, aside from exceptions that

19  are not relevant here, "[n]o cause of action may be brought and no liability may be imposed

20  under any State or local law that is inconsistent with this section." *Id*. Courts apply Section 230

21  immunity broadly to "protect websites not merely from ultimate liability, but [also] from having

22  to fight costly and protracted legal battles." *Roommates*, 521 F.3d at 1175.

23         Courts routinely rely on Section 230 in dismissing, without leave to amend, similar

24  claims based on account suspensions. *See King v. Facebook, Inc.*, 845 F. App'x 691, 692 (9th

25  Cir. 2021) (affirming dismissal where Section 230 provided immunity from claims based on,

26  among other things, "suspensions of his [Facebook] account"); *Murphy*, 60 Cal. App. 5th 12, 27–

27  28 (2021) (collecting cases showing that "[c]ourts have routinely rejected a wide variety of civil

28  claims . . . that seek to hold interactive computer services liable for removing or blocking content

1   or suspending or deleting accounts . . . on the grounds they are barred by" Section 230);

2   *Zimmerman v. Facebook, Inc.*, 2020 WL 5877863, at *1–2 (N.D. Cal. Oct. 2, 2020) ("[C]laims

3   relating to the defendants' decision to block access to their Facebook profiles are barred by

4   [Section] 230 . . . . A social media site's decision to delete or block access to a user's individual

5   profile falls squarely within this immunity. . . . Because the plaintiffs' claims relating to their

6   user accounts fail as a matter of law, amendment would be futile.") (citations omitted); *Ebeid v.

7   Facebook, Inc.*, 2019 WL 2059662, at *5 (N.D. Cal. May 9, 2019) (holding Facebook's

8   "restriction of plaintiff's use of and ability to post on the Facebook platform" is conduct that falls

9   under Section 230, which immunizes decisions about whether to delete plaintiff's user profiles).

10          Here, all three prongs of the Section 230 analysis are met: (1) X Corp. is an "interactive

11  computer service" provider; (2) Plaintiff's X accounts and content are "information provided by

12  another information content provider"; and (3) Plaintiff's claims treat X Corp. as a "publisher" of

13  his content. *See* 47 U.S.C. § 230 (c)(1); *King v. Facebook, Inc.*, 2019 WL 4221768, at *4 (N.D.

14  Cal. Sept. 5, 2019), *aff'd*, 845 F. App'x 691 (9th Cir. 2021). Section 230 accordingly immunizes

15  X Corp. from Plaintiff's claims.

16          ***X Corp. is an "interactive computer service" provider.*** Section 230 broadly defines

17  "interactive computer service" as "any information service, system, or access software provider

18  that provides or enables computer access by multiple users to a computer . . . service." 47 U.S.C.

19  § 230(f)(2). As courts repeatedly have held, X Corp. (formerly Twitter, Inc.) is an "interactive

20  computer service" provider. *See, e.g.*, *Zhang v. Twitter Inc*., 2023 WL 5493823, at *3 (N.D. Cal.

21  Aug. 23, 2023) ("Twitter is a 'provider . . . of an interactive computer service' under [Section

22  230]."); *Rangel v. Dorsey*, 2022 WL 2820107, at *3 (N.D. Cal. July 19, 2022) ("[D]espite

23  [plaintiff's] insistence to the contrary . . . Twitter clearly is a 'provider . . . of an interactive

24  computer service' under [Section 230]." (citation omitted)); *Morton v. Twitter, Inc*., 2021 WL

25  1181753, at *3 (C.D. Cal. Feb. 19, 2021) ("Every decision the Court has seen to consider the

26  issue has treated Twitter as an interactive computer service provider, even at the motion to

27  dismiss stage."). This Court already determined "[t]here is no dispute" this prong "is met." Dkt.

28  41 at 9 ("X is a provider of an interactive computer service."); *see also* SAC ¶ 7 ("X, formerly

1   Twitter, is one of the world's most predominant social media platforms and mediums for content

2   creation.").

3        ***Plaintiff's X accounts and content are information provided by another "information***

4   ***content provider."*** Section 230 defines an "information content provider" as "any person or

5   entity that is responsible, in whole or in part, for the creation or development of information

6   provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3).

7   Plaintiff continues to allege he "created user accounts" and put "his content[] and his work . . .

8   on the X platform." SAC ¶¶ 19–20 Therefore, Plaintiff's X accounts and content constitute

9   "information provided by another information content provider"—*i.e.*, not X Corp.—within the

10  meaning of the second prong of the Section 230 analysis, as the Court has already determined.

11  Dkt. 41 at 11 ("The second *Barnes* element is met for all claims."); *see also Yuksel*, 2022 WL

12  16748612, at *3 (Plaintiff "seeks to hold Twitter liable for decisions regarding 'information

13  provided by another information content provider'—that is, information that he, rather than

14  Twitter, provided."); *Brittain v. Twitter, Inc.*, 2019 WL 2423375, at *4 (N.D. Cal. June 10, 2019)

15  ("The [suspended] Accounts qualify as 'information provided by another information content

16  provider.'"); *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1117 (N.D. Cal.

17  2020) ("[Plaintiff's] account, posts, and content . . . is information provided by an 'information

18  content provider' that is not Facebook."). The second prong of the Section 230 analysis is

19  satisfied.

20       ***Plaintiff's claims seek to treat X Corp. as a "publisher."*** The third prong of Section 230

21  is satisfied because Plaintiff's claims seek to hold X Corp. liable for its alleged suspensions of

22  Plaintiff's X accounts, *i.e.*, protected "publishing" activity under Section 230. 47 U.S.C. § 230

23  (c)(1); *see also Zhang*, 2023 WL 5493823, at *4 ("All of Plaintiff's claims seek to treat Twitter

24  as a publisher" under Section 230, since "all his claims *relate to* the suspension of his account

25  . . . whether they are styled as breach of contract, tort, or fraud claims.") (emphasis added);

26  *Yuksel*, 2022 WL 16748612, at *4 (Plaintiff "seeks to treat Twitter as the publisher because his

27  claims derive entirely from Twitter's decision to exclude his content and suspend his account—

28  that is, traditional publishing functions."); *Rangel*, 2022 WL 2820107, at *3 (same).

For purposes of Section 230 immunity, what matters "is not the name of the cause of action, [but] whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101–02 (9th Cir. 2009); *see also, e.g.*, *King*, 2019 WL 4221768, at *4 (dismissing breach of contract, fraud, UCL, and other claims, where "each of [plaintiff's] claims seeks to treat Facebook as a publisher, because each is based on Facebook's provision of," among other things, "its moderator decisions on . . . which accounts to suspend or not"), *aff'd,* 845 F. App'x at 692 ("Any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." (cleaned up) (quoting *Roommates*, 521 F.3d at 1170–71)); *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1066 (N.D. Cal. 2016) (Section 230 barred contract, tort, and statutory claims based on alleged violation of Facebook's terms of service for failure to remove content, where alleged "editorial inaction" is also protected "publisher" conduct), *aff'd,* 700 F. App'x 588 (9th Cir. 2017).

Like the unjust enrichment claim asserted in the FAC, Plaintiff's unjust enrichment claim asserted in the SAC is premised on allegations that X Corp. "terminated Plaintiff's accounts" but "continues to receive advertising revenue" from "Plaintiff's content." SAC ¶¶ 68–70; Dkt. 41 at 12 (The FAC's unjust enrichment claim "alleges that X's decision to continue publishing ads connected to his accounts was wrongful, and its retention of associated revenue is unjust."). In other words, "[t]his claim challenges X's publishing activity. It is barred by section 230." Dkt. 41 at 12. Section 230 also bars Plaintiff's UCL claim to the extent it is premised on the same allegations. SAC ¶ 92; *see also* Dkt. 29 at 15 (Section 230 barred Plaintiff's UCL claim in the initial Complaint to the extent it was based on account suspension).

For his promissory estoppel and promissory fraud claims, and the remainder of his UCL claim, Plaintiff attempts to plead around Section 230 with the theory that X Corp. made a "promise of an appeal policy" but "did not give Plaintiff an opportunity to appeal." SAC ¶¶ 55–56; *see also id.* ¶¶ 77, 90. But Plaintiff alleges that he "submitted 13 individual and separate appeals" (*id.* ¶ 53.g); that X Corp. failed to "reinstate[]" the accounts after the appeals were allegedly submitted (*id.*); and that he ultimately suffered harm to his business because of his

1  "suspension from the X platform" (*id.* ¶¶ 50–51). In other words, his allegation that he was

2  denied the opportunity to appeal is not only contradicted by his other allegations that he

3  submitted 13 appeals; it also confirms that Plaintiff's claims, at their core, seek to impose

4  liability against X Corp. for its alleged decisions to suspend his accounts and to decline to restore

5  those accounts on X. *See Roommates*, 521 F.3d at 1170-71 ("[A]ny activity that can be boiled

6  down to deciding whether to exclude material that third parties seek to post online is perforce

7  immune under section 230"). While Plaintiff may disagree with X Corp.'s decisions to suspend

8  his accounts, artful drafting cannot, and should not, be permitted to eliminate X Corp.'s Section

9  230 immunity from liability for those protected publishing decisions.

10      In sum, all three prongs of the Section 230 analysis are met, and Section 230 immunizes

11  X Corp. from all of Plaintiff's claims.

12      **C.    The First Amendment Bars Plaintiff's Claims**

13      The First Amendment independently bars Plaintiff's claims because that constitutional

14  amendment protects X Corp.'s editorial decisions about what content it permits to be

15  disseminated on its private social media platform, as this Court has recognized. *See* Dkt. 29 at 4.

16      The Supreme Court recently confirmed that "[w]hen [social media] platforms use their

17  Standards and Guidelines to decide which third-party content those feeds will display . . . they

18  are making expressive choices. And because that is true, they receive First Amendment

19  protection." *Moody v. NetChoice, LLC*, 603 U.S. 707, 740 (2024). Consistent with this

20  conclusion, this Court has recognized that "[l]ike a newspaper or a news network, [X Corp.]

21  makes decisions about what content to include, exclude, moderate, filter, label, restrict, or

22  promote, and those decisions are protected by the First Amendment." *O'Handley v. Padilla*, 579

23  F. Supp. 3d 1163, 1186–87 (N.D. Cal. 2022) (dismissing on First Amendment grounds claims

24  based in part on X Corp.'s permanent suspension of a user's account), *aff'd on other grounds sub*

25  *nom. O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023); *see also Padilla*, 579 F. Supp. 3d at

26  1188 ("[X Corp.] has important First Amendment rights that would be jeopardized by a Court

27  order telling [X Corp.] what content-moderation policies to adopt and how to enforce those

28  policies."); *Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1261 (S.D. Fla. 2021) (X Corp.

"has a First Amendment right to decide what to publish and what not to publish on its platform" (internal quotation marks omitted)).

In the First Dismissal Order, this Court explained that "the same claims that are barred by section 230 would probably fail under *Moody*." Dkt. 29 at 4. That is the case here: as explained in Section IV.B., *supra*, all of Plaintiff's claims seek to hold X Corp. liable for its editorial decisions through account suspensions about what content it allows to be disseminated on its private social media platform. The First Amendment therefore bars Plaintiff's claims, which should be dismissed.

### D.    Plaintiff Fails to State Any Plausible Claim

#### 1.    *Plaintiff Fails to State a Plausible Claim for Promissory Estoppel*

This Court previously dismissed Plaintiff's promissory estoppel claim as "implausible." Dkt. 29 at 19. Plaintiff's promissory estoppel claim as asserted in the SAC is no different and should be dismissed for failure to state a claim.

> A claim for promissory estoppel requires (1) a promise clear and unambiguous in its terms, (2) reliance by the party to whom the promise is made, (3) the reliance must be reasonable and foreseeable, and (4) the party asserting the estoppel must be injured by his or her reliance, meaning he or she alleges legally cognizable, economic damages. *See Murphy*, 60 Cal. App. 5th at 38 (laying out the elements for promissory estoppel).

Dkt. 29 at 16–17.

Plaintiff's promissory estoppel claim fails as a matter of law, for several reasons. *First*, as a threshold matter, Plaintiff admits the Terms constitute a binding "contract" between the parties. *E.g.*, SAC ¶ 56. "[W]here the promisee's reliance was bargained for, the law of consideration applies; and it is only where the reliance was unbargained for that there is room for application of the doctrine of promissory estoppel." *Avidity Partners, LLC v. State of Cal.*, 221 Cal. App. 4th 1180, 1209 (2013); *see also Total Coverage, Inc. v. Cendant Settlement Servs. Grp., Inc.*, 252 F. App'x 123, 126 (9th Cir. 2007) (affirming dismissal of promissory estoppel claim where plaintiff alleged the parties had a valid written contract). Because Plaintiff agreed to the Terms—which governs both Plaintiff's access to his accounts and X Corp.'s rights to suspend his accounts—his promissory estoppel claim is barred.

1    *Second*, as the Court noted in its First and Second Dismissal Orders, the alleged

2    "promises" contained in excerpts from the Terms, its policies and practices, support emails

3    allegedly sent by X Corp. after his accounts were suspended, and the "X Help Center" webpage

4    on which Plaintiff relies—the *same ones* he asserted in his initial Complaint and FAC—do not

5    contain any promise made by X Corp. Dkt. 29 at 17–19; Dkt. 41 at 7; *see also* Dkt. 29 at 17

6    (listing "specific, personal promises" X purportedly made to Plaintiff); *Murphy*, 60 Cal. App. 5th

7    at 39 ("No plausible reading of the . . . contract terms and general statements [plaintiff]

8    identifies"—in the Terms, "Twitter Rules," and "Enforcement Guidelines," and "Safety page"—

9    "promises users that they will not have their content removed nor lose access to their account

10    based on what they post online"). This Court has already decided that Plaintiff fails to state a

11    plausible promissory estoppel claim based on those alleged statements, and it should do so again

12    here.

13    *Third*, Plaintiff has not plausibly alleged that he reasonably and foreseeably relied on X

14    Corp.'s alleged promises and assurances. He alleges in conclusory fashion that X Corp.'s

15    purported "promises" of his "ability to appeal the suspension overrode" the Terms' provision

16    expressly allowing X Corp. to suspend his accounts "at any time for any reason." SAC ¶ 58.

17    Such conclusory allegations are "not entitled to be assumed true." *Ashcroft*, 556 U.S. at 681. In

18    any event, Plaintiff could not have reasonably or foreseeably relied on any purported promise

19    that was contrary to the express provisions in the Terms. *See Murphy*, 60 Cal. App. 5th at 39

20    (alleged reliance was not reasonable where "the very terms of service that [plaintiff] relies on . . .

21    make clear that Twitter may suspend or terminate an account for any or no reason").

22    *Finally*, Plaintiff's speculative allegation that he was injured because he "use[d] the X

23    online platform instead of other available platforms" to build his business does not plausibly

24    allege any injury resulting from his alleged reliance. SAC ¶ 60; *see also Mend Health, Inc. v.

25    Carbon Health Techs., Inc.*, 588 F. Supp. 3d 1049, 1057 (C.D. Cal. 2022) ("Plaintiff's

26    allegations that it forwent alternative options to expand its business are insufficient."); *Anderson

27    v. PHH Mortg.*, 2012 WL 4496341, at *3 (C.D. Cal. Sept. 28, 2012) ("[C]onclusory statements

28    regarding [alternative options] are insufficient because [plaintiffs] have not alleged that they

15

1    would have been successful in pursuing either of these options."). And Plaintiff could not have

2    relied on the "X Suspension Notice" and "X Support" emails in allegedly choosing to use the X

3    platform to build his business, because he alleges X Corp. sent them *after* he had already built

4    his business. SAC ¶ 53.d-f; *see also Patriot Sci. Corp. v. Korodi*, 504 F. Supp. 2d 952, 968 (S.D.

5    Cal. 2007) (Plaintiff "could not, in choosing to enter into the consulting agreement in August of

6    2005 and to provide consulting services pursuant thereto, have relied on the later, written

7    promise given to him in February of 2006.").

8           Plaintiff's promissory estoppel claim therefore should be dismissed.

9                  2.      *Plaintiff Fails to State a Plausible Claim for Unjust Enrichment*

10          This Court previously held that Plaintiff failed to state a plausible unjust enrichment

11   claim. *See* Dkt. 29 at 15–16. Plaintiff's rehashed unjust enrichment claim asserted in the SAC

12   likewise should be dismissed.

13          "The elements of an unjust enrichment claim are the receipt of a benefit and the unjust

14   retention of the benefit at the expense of another." *Peterson v. Cellco P'ship*, 164 Cal. App. 4th

15   1583, 1593 (2008) (cleaned up). "An unjust enrichment claim is 'grounded in equitable

16   principles of restitution,' rather than 'breach of a legal duty.'" Dkt. 29 at 15 (citing *Calise v.

17   Meta Platforms, Inc.*, 103 F.4th 732, 743 (9th Cir. 2024) and *Hirsch v. Bank of Am.*, 107 Cal.

18   App. 4th 708 (2003)).

19          Plaintiff again fails to state a plausible claim for unjust enrichment, for several reasons.

20   *First*, Plaintiff admits the Terms constitute a binding "contract" (*e.g.*, SAC ¶ 56), and the Terms

21   contain a specific provision that bars his claim. *See Sepanossian v. Nat'l Ready Mix Co., Inc.*, 97

22   Cal. App. 5th 192, 207 (2023) (dismissing unjust enrichment claim because plaintiff "does not

23   dispute there were express form contracts"); *see also* Dkt. 29 at 16 (Plaintiff "admits that he was

24   subject to a binding contract with X, which would seemingly undermine his unjust enrichment

25   claim." (internal citation omitted)). In the Terms, Plaintiff expressly agreed that "[b]y . . . posting

26   . . . Content on" the X platform, he "grant[ed] [X Corp.] a worldwide, non-exclusive, royalty-free

27   license . . . to use, . . . display and distribute such Content in any and all media" and that "*no*

28

*compensation* [would be] paid to" to him. RJN, Ex. A at 3.[3] Plaintiff's speculative assertions that X Corp. "continued to derive profits from Plaintiff's intellectual property" and "continues to receive advertising revenue from Plaintiff's intellectual property and content" (SAC ¶¶ 70–71), therefore are barred by the Terms' specific provision providing that X Corp. could use, display, and distribute his content without any compensation to him. *See Zepeda v. PayPal, Inc.*, 777 F. Supp. 2d 1215, 1223 (N.D. Cal. 2011) (dismissing unjust enrichment claim because "a valid express contract exists between the parties that covers the subject matter at issue").

   *Second*, Plaintiff fails to allege any facts that would state a plausible unjust enrichment claim. For example, Plaintiff does not allege any new facts that would support his speculative allegation that "hidden" posts from a suspended account are viewable to other X users "alongside any advertising." SAC ¶ 40. And Plaintiff's recycled allegation that "[a]ny profits traceable" to his "cryptocurrency and NFT business . . . expertise, and artwork are a benefit conferred on X [Corp.] that it should not have received" (SAC ¶ 72) is too conclusory and speculative to plead a plausible unjust enrichment claim. *See* Dkt. 29 at 16 ("Other courts have held that 'suspected windfalls' like the type that [Plaintiff] alleges here are not sufficient to maintain unjust enrichment claims." (citing *Watkinson v. MortgageIT, Inc.*, 2010 WL 2196083, at *7 (S.D. Cal. June 1, 2010))); *see also id.* (dismissing unjust enrichment claim because Plaintiff "only speculates about the profit that X has supposedly retained," and allegations "that Defendant *might* receive a windfall . . . are insufficient to raise a right to relief above the speculative level" (internal quotation mark omitted)); *Marina Tenants Ass'n v. Deauville Marina Dev. Co.*, 181 Cal. App. 3d 122, 134 (1986) ("[T]he mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor." (internal quotation mark omitted)).

   Plaintiff's lone new allegation that he paid for a "premium subscription" for "at least one

---

[3] The Terms provide that this term "shall continue to apply" even after a user's account is terminated. RJN, Ex. A, at 4 (stating "sections shall continue to apply: 2, 3, 5, 6"); *id.* at 3 (cited term falls within section 3). Therefore, even if Plaintiff's conclusory assertion that the alleged suspensions of his X accounts amounted to a "terminat[ion]" of "the contracts between the parties" (SAC ¶ 69) was correct (it is not), the specific provision that bars his unjust enrichment claim would still be effective. *See also Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021) ("courts need not accept as true legal conclusions").

1    user account" cannot support an unjust enrichment claim. SAC ¶ 19. "There is no equitable

2    reason for invoking restitution when the plaintiff gets the exchange which he expected."

3    *Peterson*, 164 Cal. App. 4th at 1593. Plaintiff does not allege he did not receive any of the

4    services associated with the "premium subscription." *See Dang v. Samsung Elecs. Co.*, 2018 WL

5    6308738, at *11 (N.D. Cal. Dec. 3, 2018) (dismissing unjust enrichment claim where plaintiff

6    "d[id] not allege facts showing that it was unjust for [defendant] to keep Plaintiff's money"),

7    *aff'd*, 803 F. App'x 137 (9th Cir. 2020); *Chuang v. Dr. Pepper Snapple Grp., Inc.*, 2017 WL

8    4286577, at *8 (C.D. Cal. Sept. 20, 2017) (dismissing unjust enrichment claim where plaintiff

9    "received the benefit of the bargain"). Plaintiff's new allegation fails to establish he did not get

10   the "exchange which he expected," and therefore fails to plausibly allege an unjust enrichment

11   claim. *Peterson*, 164 Cal. App. 4th at 1593.

12        In sum, Plaintiff fails to state a plausible unjust enrichment claim, which should be

13   dismissed as a matter of law.

14        3.    *Plaintiff Fails to State a Plausible Claim for Promissory Fraud*

15        This Court has repeatedly found that Plaintiff failed to plausibly allege promissory fraud.

16   Dkt. 29 at 16–19; Dkt. 41 at 7–8. His promissory fraud claim in his SAC fares no better, and the

17   claim should be dismissed again.

18        "The elements of promissory fraud are the same [as for promissory estoppel], except that

19   to plead promissory fraud, a plaintiff must also plausibly allege that a false promise was made

20   and that the promisor *knew* of the falsity when making the promise." Dkt. 29 at 16–17 (citing

21   *Riggs v. MySpace, Inc.*, 444 F. App'x 986, 988 (9th Cir. 2011)).

22        As in his prior pleadings, Plaintiff's promissory fraud claim is based on purported "false

23   representations of fact" in the Terms, the "X Help Center" webpage, the "X Suspension Notice,"

24   and the "X Support" emails that X Corp.: (a) suspends accounts only "for reasonable grounds,"

25   (b) would provide "a reason . . . in the event of suspension," and (c) would give Plaintiff "the

26   opportunity to appeal his suspension."[4] SAC ¶¶ 53, 77; *see also* Compl. ¶¶ 64, 101; FAC ¶¶ 84,

27

28   ───────────────
     [4] As noted above, Plaintiff contradictorily alleges he "submitted 13 individual and separate
     appeals from April 2 until April 18." SAC ¶ 53.g.

113. Plaintiff alleges these representations were made "by one or more officers, directors, or managing agents of X" Corp., and that he "relied on" them in using the X platform. SAC ¶¶ 81–82, 85. These allegations do not plausibly allege promissory fraud, for several reasons.

*First*, this Court already considered these exact allegations and determined there is nothing that "can [be] reasonably interpret[ed] as a 'promise' by X [Corp.] to not suspend his account[s] in the manner that it did." Dkt. 29 at 19. Having made no new allegations on this front, this Court should again dismiss his promissory fraud claim for the same reason.

*Second*, even if considered anew, the claim fails because Plaintiff fails to plead fraud with the requisite level of particularity. "Parties must allege fraud with particularity under Federal Rule of Civil Procedure 9(b), including the who, what, when, where, and how of the misconduct charged." *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 958 (9th Cir. 2023) (cleaned up). "For corporate defendants, a plaintiff must allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Flowers v. Wells Fargo Bank, N.A.*, 2011 WL 2748650, at *6 (N.D. Cal. July 13, 2011) (internal quotation mark omitted). Plaintiff does not allege anything close to the requisite level of particularity: He does not allege when he saw the representations, when he created his X accounts or built his business in reliance on the representations, or the names of those at X Corp. who made the representations. *See* Dkt. 41 at 8 (Plaintiff's "generalized allegations . . . do not come close to meeting the Rule 9(b) particularity standard."); *McAfee v. PHH Mortg. Corp.*, 2019 WL 13203931, at *3 (N.D. Cal. Oct. 8, 2019) (dismissing fraud claim where plaintiff "fail[ed] to identify which Defendant they contacted and who they spoke with . . . [and] when the conversation took place"). Plaintiff also does not allege facts supporting his conclusory allegation that X Corp. did not intend to "abide by" the purported statements. *See UMG Recs., Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1108 (C.D. Cal. 2015) ("[A]lleging why the promise was false when made requires pleading facts from which it can be inferred that the promisor had no intention of performing at the time the promise was made.") (dismissing fraud claim); *Magpali v. Farmers Grp., Inc.*, 48 Cal. App. 4th 471, 481 (1996) ("[S]omething more than nonperformance is required to prove the defendant's intent not

1  to perform his promise."). Plaintiff fails to plead fraud with particularity, and thus the claim

2  should be dismissed.

3      *Third*, Plaintiff does not plausibly allege any false statement of fact. The SAC's alleged

4  excerpts from the Terms and "X Help Center" webpage do not even mention appeals and cannot

5  plausibly be interpreted as a promise that Plaintiff "would be given an opportunity to appeal his

6  suspension." SAC ¶¶ 53, 77; *see also Cullen v. Netflix, Inc.*, 2013 WL 140103, at *7 (N.D. Cal.

7  Jan. 10, 2013) (dismissing fraud claim where "Plaintiff's interpretation" of defendant's blog post

8  was "[c]ontrary" to the post's actual statements), *aff'd*, 600 F. App'x 508 (9th Cir. 2015). As for

9  the "X Suspension Notice" and "X Support" emails, Plaintiff does not plausibly allege that X

10  Corp. falsely stated he would be allowed the opportunity to appeal. To the contrary, Plaintiff

11  specifically alleges he "submitted 13 individual and separate appeals." SAC ¶ 53.g; *see also*

12  *Jenkins v. Commonwealth Land Title Ins. Co.*, 95 F.3d 791, 796 (9th Cir. 1996) (affirming

13  dismissal of fraud claim where defendant "fulfill[ed] its obligations under [a] policy" and

14  therefore "the alleged representation is not false, and . . . not fraudulent"). In short, Plaintiff does

15  not plausibly allege any false statement of fact by X Corp.

16      *Fourth*, with respect to the reliance element, as noted above, Plaintiff could not have

17  reasonably relied on the purported excerpts from the Terms and "X Help Center" webpage as

18  setting forth any appeals policy because the excerpts do not address or even mention appeals. *See*

19  *Justo v. Indymac Bancorp*, 2010 WL 623715, at *5 (C.D. Cal. Feb. 19, 2010) ("[N]o person in

20  their position could have reasonably relied on the statements as promises to modify loans. . . .

21  None of them expressly mention loan modification."). Plaintiff likewise could not have plausibly

22  relied on the "X Suspension Notice" and "X Support" emails to create his X accounts or build

23  his business on the X platform, because Plaintiff alleges X Corp. sent those emails *after* X Corp.

24  suspended his accounts. *See Derakhshan v. Mortg. Elec. Registration Sys., Inc.*, 2009 WL

25  10673155, at *7 (C.D. Cal. June 29, 2009) (dismissing fraud claim based on statements made

26  after plaintiff signed loan agreement because plaintiff could not have relied on them in taking out

27  the loan). Plaintiff cannot plausibly allege reliance on any of X Corp.'s purported promises.

28      *Fifth*, Plaintiff does not plausibly allege damages. Plaintiff continues to allege his

1   damages are tied to his "suspension[s] from the X platform" (SAC ¶ 50; *see also, e.g., id.* ¶¶ 60,

2   84), even though the Court already dismissed his claims that "seek to hold X liable for the act of

3   suspending [Plaintiff's] account[s]." Dkt. 29 at 1. Plaintiff also does not and cannot plausibly

4   allege any harm from his purported inability to submit an appeal (which, as noted, is belied by

5   his separate allegation that "submitted 13 individual and separate appeals") (SAC ¶ 53.g),

6   because he cannot allege his appeals were guaranteed to succeed. *See Minor v. Laggner*, 2018

7   WL 10498450, at *7 (C.D. Cal. Dec. 10, 2018) (plaintiff failed to allege damages caused by

8   defendants' false statement that they secured third-party financing where, even if the statement

9   was true, "there was no guarantee" the company's board of directors "would have accepted" the

10  financing proposal).

11      *Sixth*, California's economic loss rule bars Plaintiff's promissory fraud claim. "The

12  economic loss rule limits a party to a contract 'to recovering in contract for purely economic loss

13  . . . unless he can demonstrate harm above and beyond a broken contractual promise.'" *Rattagan*

14  *v. Uber Techs., Inc.*, 19 F.4th 1188, 1191 (9th Cir. 2021) (brackets omitted) (quoting *Robinson*

15  *Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004)). Economic loss is "pecuniary or

16  commercial loss that does not arise from actionable physical, emotional or reputational injury to

17  persons or physical injury to property." *S. Cal. Gas Leak Cases*, 7 Cal. 5th 391, 398 (2019). Tort

18  "claims are barred when they arise from—or are not independent of—the parties' underlying

19  contracts." *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 923 (2022).

20      Plaintiff does not plausibly allege he suffered any physical, emotional, or reputational

21  injury or any physical harm to his property. His purported loss of "profits" is premised on X

22  Corp.'s alleged suspensions of his accounts (SAC ¶¶ 50–51)—which, as noted, are governed by

23  the Terms. The economic loss rule therefore bars Plaintiff's promissory fraud claim. *See JMP*

24  *Sec. LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1043 (N.D. Cal. 2012)

25  (economic loss rule barred fraud claims that "consist of nothing more than [defendant's] alleged

26  failure to make good on its contractual promises"); *Oracle USA, Inc. v. XL Glob. Servs., Inc.*,

27  2009 WL 2084154, at *4 (N.D. Cal. July 13, 2009) (economic loss rule barred promissory fraud

28  claim where "the exchanges between [the parties] allegedly constituted a separate contract or

1    agreement, by the terms of [plaintiff's] own complaint").

2          Thus, Plaintiff's promissory fraud claim should be dismissed as a matter of law.

3                    4.    *Plaintiff Fails to State a Plausible UCL Claim*

4          The Court previously found Plaintiff failed to plausibly allege a UCL claim. Dkt. 29 at

5    20–21. In his SAC, Plaintiff again fails to plausibly allege a UCL claim, for several reasons.

6          *First*, Plaintiff fails to plausibly allege he has standing because "he does not allege a 'loss

7    or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury.'"

8    Dkt. 29 at 20 (quoting *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 322 (2011)). In the SAC,

9    Plaintiff repeats the same allegations from his initial Complaint and FAC about the alleged

10   damage to Plaintiff's "cryptocurrency and NFT business," his purported loss of the "ability to

11   promote his upcoming NFT projects or generate momentum," and his alleged continued loss of

12   "any prospective financial advantage or profits he had earned and was projected to earn." SAC

13   ¶ 50. This Court already found these allegations "are insufficient to establish standing under the

14   UCL." Dkt. 29 at 20. Plaintiff's allegations also are too speculative to plausibly allege injury-in-

15   fact for UCL standing. *See id.* (explaining that Plaintiff must plausibly "allege loss of an existing

16   contract[], or another concrete economic injury"); *Rogozinski v. Reddit, Inc.*, 2023 WL 4475581,

17   at *9 (N.D. Cal. July 11, 2023) ("[I]t is not sufficient for purposes of establishing standing under

18   the UCL for a plaintiff to allege lost business opportunities, lost anticipated profits, or injury to

19   goodwill." (internal quotation marks omitted)). Even if Plaintiff's alleged injuries could establish

20   UCL standing (they cannot), Plaintiff also fails to show they "resulted from X's alleged

21   misrepresentations regarding his account suspension, not from the suspension itself." Dkt. 29 at

22   20. Plaintiff's allegation that he paid for a "premium subscription" for "at least one user account"

23   (SAC ¶ 19) does not establish UCL standing. "If one gets the benefit of his bargain, he has no

24   standing under the UCL." *Johnson v. Mitsubishi Digital Elecs. Am., Inc.*, 365 F. App'x 830, 832

25   (9th Cir. 2010) (affirming dismissal of UCL claim). That Plaintiff allegedly paid for a "premium

26   subscription" is not a loss for purposes of establishing UCL standing. *See Warner v. Tinder Inc.*,

27   105 F. Supp. 3d 1083, 1095 (C.D. Cal. 2015) (dismissing UCL claim because plaintiff's paying

28   to subscribe to premium version of dating app did not constitute "a loss capable of restitution

1    under the . . . UCL"). In sum, Plaintiff fails to plausibly allege standing for purposes of his UCL

2    claim.

3    *Second*, Plaintiff fails to plausibly allege "any unlawful, unfair or fraudulent business act

4    or practice" within the meaning of the UCL. Cal. Bus. & Profs. Code § 17200. Plaintiff contends

5    that X Corp. engaged in "unfair" conduct based on the purported "promise . . . that he would

6    have the opportunity to appeal" and by purportedly "retain[ing] a license" to Plaintiff's content

7    after the suspensions. SAC ¶¶ 89–90. These allegations fail to plausibly allege any "unfair"

8    conduct. A business practice is unfair within the meaning of the UCL if it violates established

9    public policy or if it (a) "offends an established public policy or when the practice is immoral,

10   unethical, oppressive, unscrupulous or substantially injurious to consumers" or (b) "threatens an

11   incipient violation of an antitrust law, . . . or otherwise significantly threatens or harms

12   competition," where the unfairness is "tethered to some legislatively declared policy or proof of

13   some actual or threatened impact on competition." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 866

14   (9th Cir. 2018) (internal citations omitted). Plaintiff does not plausibly allege that X Corp.

15   violated any public policy or engaged in "immoral, unethical, oppressive or unscrupulous

16   conduct," based on the alleged "artificial intelligence system" or "retaining a license" to

17   Plaintiff's conduct, particularly when the Terms expressly permit X Corp. to suspend accounts

18   "without liability" to him and provide that Plaintiff granted X Corp. a "royalty-free license . . . to

19   use" his content "in any and all media." RJN, Ex. A at 3; *see also Davis v. HSBC Bank Nev.,*

20   *N.A.*, 691 F.3d 1152, 1170 (9th Cir. 2012) (advertisements were not "against public policy,

21   immoral, unethical, oppressive, or unscrupulous," where defendant's application process

22   disclosed annual fee but plaintiff "failed to read the terms and conditions"). And Plaintiff

23   "advances no factual allegations" to support a claim that X Corp.'s conduct "threaten[s] to

24   violate the letter, policy, or spirit of the antitrust laws, or that it harms competition."[5] *Davis*, 691

25

26   ─────────────────
     [5] To the extent Plaintiff alleges an "unfair" prong claim based on the allegation the Terms

27   "prohibit[] users from linking to third party social media platforms" in order "to prevent
     competition with X" (SAC ¶¶ 46–47), Plaintiff does not allege that he attempted to link to any

28   other social media platform or was harmed by the purported prohibition in the Terms. Moreover,
     the Terms do not contain such a prohibition. *See generally* RJN, Ex. A.

F.3d at 1170.

Plaintiff also contends that X Corp. engaged in "fraudulent" conduct based on X Corp.'s alleged promise that "users will have an opportunity to appeal account suspensions." SAC ¶ 91. These allegations fail to plausibly allege "fraudulent" conduct for UCL purposes, because they do not identify any plausible misrepresentation or otherwise allege fraudulent conduct with particularity as required by Rule 9(b). *See* Section IV.D.3, *supra*; *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (affirming dismissal of UCL claim based on fraud but not pled with particularity); *Garcia v. Sony Comput. Ent. Am., LLC*, 859 F. Supp. 2d 1056, 1066 (N.D. Cal. 2012) (dismissing UCL claim where plaintiff "cannot first identify a plausible misrepresentation").

Thus, Plaintiff's UCL claim should be dismissed.

**E.    Leave to Amend Should Be Denied**

Although Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave [to amend] when justice so requires," dismissal without leave to amend is appropriate where "amendment would [be] futile." *See Austin v. Tesla, Inc.*, 2022 WL 2315210, at *1 (9th Cir. 2022) (affirming dismissal of complaint without leave to amend "because amendment would have been futile" (citing *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011))); *Snyder v. Allison*, 857 F. App'x 329, 330 (9th Cir. 2021) (same).

That is the case here. After three bites at the apple, Plaintiff still cannot state a plausible claim against X Corp. As this Court has found, "[a]ll of [Plaintiff's] claims are barred by the Terms." Dkt. 41 at 3–8. While Plaintiff may again argue his fraud claim is not barred by the Terms, this Court has already held the same alleged "personal promises and assurances" Plaintiff has recycled from his prior pleadings for his fraud claim (SAC ¶ 53; FAC ¶ 85; Compl. ¶ 64) do not contain any promise by X Corp. (Dkt. 29 at 17–19; Dkt. 41 at 7) and "do not come close to meeting the Rule 9(b) particularity standard" (Dkt. 41 at 7).

Finally, although Plaintiff tries to plead around Section 230 and the First Amendment, he ultimately continues to allege his "suspension from the X platform . . . damaged his cryptocurrency and NFT business," to support the damages he seeks. SAC ¶¶ 50–51. Plaintiff's

claims therefore seek to impose liability against X Corp. for its protected publishing activity and are inescapably barred by Section 230 and the First Amendment (in addition to the Terms). Yet another opportunity to amend will not save Plaintiff's futile claims. *See* Dkt. 41 at 13 (The Court "expect[s] that [it] will not agree to further amendment" after the SAC); *Kaur v. Comptroller of Currency, U.S. Dep't of the Treasury*, 696 F. App'x 236–37 (9th Cir. 2017) (affirming dismissal of "second amended complaint without further leave to amend because the district court [had] provided [plaintiffs] with two opportunities to amend and further amendment would be futile").

In sum, despite having "one last opportunity" to amend, Plaintiff again failed to state a plausible claim. He should not be afforded a *fourth* attempt to plead his legally infirm claims. Plaintiff's meritless case should finally be dismissed without leave to amend.

## V.    <u>CONCLUSION</u>

For these reasons, this Court should dismiss the SAC without leave to amend.

Respectfully submitted,

Dated:  February 12, 2025                         WILLENKEN LLP

By:   */s/ Kenneth M. Trujillo-Jamison*
Kenneth M. Trujillo-Jamison
Attorneys for Defendant X Corp.